Deaderick, J.,
delivered the opinion of the Court.
This is an action for debt, brought in the Circuit Court of Williamson county upon a promissory note for §4,000, dated December 26, 1861, and payable four months after date at the office of the Planters Bank at Franklin. The note sued on was given in renewal of a previously executed note for §5,000, which was given in renewahof the original note for §5,000, dated the 25th of April, 1861, payable four months after date, at said Bank, drawn by a number of parties and endorsed to the Bank by the defendant, McGavock et als, and discounted by the said Planters Bank at Franklin on the day of its dale.
Before the execution of the note sued on, payments had been made upon the note it was given to renew, reducing the sum to $4,000, for which the note in controversy was drawn by John McGavock and James Park, and endorsed by S. S. House, L. H. Mosely and J. W. Baugh.
At maturity the note, not having been paid, was regularly protested, of which defendants were duly notified.
Long after the protest of said note, to-wit: January 22, 1864, the Cashier of the Planters Bank at Franklin assigned it to P. Keese, the intestate of plaintiff, “ without recourse on the Sank in law or equity.”
Keese in his life time brought suit on the note, and having died pending the suit, it was revived in the name of the plaintiff, his administrator.
At the July Term, 1867, of the Circuit Court, a verdict and judgment were rendered for the plaintiff. The defendants appealed in error to this court, and the judgment of the Circuit Court was reversed at the December Term, 1868, and the cause remanded for a new trial.
At the .November Term, 1869, of the Circuit Court, the cause was again submitted to a jury, and a verdict was rendered for the defendants, and the court, refusing a new trial, gave judgment in conformity to the verdict from which the plaintiff has appealed to this court.
From the record it appears that on the 22d of April, 1861, an agreement was signed by a large number of citizens of the county of Williamson, in which'it is recited that the Country and State were threatened with war, and the interests of Tennessee required that she should be placed upon a war footing at as early a day as possible, and that volunteer troops should be raised and equipped. Therefore to raise and equip said troops, the signers of said agreement covenanted and agreed that they would *462 “raise the sum of $5 000 by note for that amount made payable in the Planters Bank of Tennessee at Franklin four months after date, and dated the 25th day of April, 1861, drawn by John McGavock and others.” And each of the parties to said agreement bound himself to pay his pro rata share to discharge said note.
This agreement was signed by about one hundred persons. On the 25th •of April, 1861, three days after the date of said agreement, the note of $5,000 was discounted by the said Bank at Franklin. Several of the Directors of the Bank signed the said agreement; and it is otherwise satisfactorily shown that the Board of Directors knew that the makers of the note intended to apply the px-oceeds of it to equipping a volunteer force to resist the armies then being raised by the United States Government. It further appears that by an order of the parent Bank at Nashville, the Branch at Franklin was not authorized to discount any note for a larger amount than $500, unless expressly empowered to do so. One of the Directors of the Bank at Franklin went to Nashville for the purpose, and obtained the consent of the Directory there to discount the note for $5,000, upon the representation offered that the note was perfectly good.
The intestate of the plaintiff was one of the one hundred signers of the agreement, and paid his pioportion toward the fund which was intended to be raised to liquidate the $5,000 note.
The plainiiff insists that he is entitled to a reversal of the judgment for errors committed by his Honor, the Circuit Judge, in his charge to the jury, as well as because of his refusal to charge the several propositions submitted in writing by his counsel.
(Here follows a reproduction of the assignment of eiTors upon the charge, with rimming comments by the Oourt.) .
Is the contract sued on in this case void, either because of the illegality of the consideration for which it was given, or because it is an agreement to do an act contra bonos mores, or inhibited by law, or in violation of public policy?
The contract itself is a promissory note. Upon the face of it there does not appear any illegal consideration expressed for the payment of the money which the drawers promise to pay, nor is there in the record any ■written collateral agreement between the lender and the borrowers, setting-out any other or different consideration than that expressed upon the face of the note. It contains no stipulation for the performance of any illegal act.
Waiving any discussion or decision of the question as to how far the purpose of the Directors, as individuals, can he regarded as the purposes of the Bank, if not expressed-in the contract with the Bank, or in some other mode by which the corporation is authorized by its charter to contract; and conceding that the purpose of one or more, or all of the Directors was, in discounting the note, to enable the defendants to equip the volunteer force — does a mere motive, not expressed in, nor otherwise enter *463 ing into the contract avoid it ? Does the inducement or purpose, -which moves a party to enter into a contract, constitute any part of the consideration of said contract, in the absence of any stipulation or agreement, expressed or implied, to that effect?
“ Mere knowledge of the illegal purpose of a contract, without participation or interest in the illegal act itself, will not effect the validity of the contract ” — 2 Kent, 467, note a, and authorities cited.
In the elaborate and able opinion of Chief Justice Marshall, 11 Wheat., 271, it is said.

(The extract and eommenb are omitted.)

The validity of the contract depends upon its terms and stipulations, and the consideration upon which it was executed. The contract we are investigating is that entered into by the defendants with the Bank, not that subsequent agreement made with other parties organized as volunteers. If the whole of the contract by the Bank was to loan the money, and on the part of the defendants that they would pay it back at a specified time, such contract is a legal one, founded on sufficient legal consideration, and its performance must be enforced.
The knowledge of the lender of the illegal use to which the money is intended to be applied by the borrower, or the purposes or motives of the lender, if neither enter into and forms part of the contract or consideration for the loan, cannot impair its validity. The consideration is the cause of the contract, and is distinct from the motive to it. 1 Parsons on Contracts, 429, and note e.
To hold that the knowledge, motive, or purpose of the lender shall have the effect to avoid the contract would be to hold that a promise to pay money for a legal consideration might be avoided by a motive or purpose of the lender, not forming any part of the consideration for which the promise was made. This would be to substitute a motive or purpose, perhaps unexpressed and resting alone in the mind of the lender, for entering into the contract, for the contract itself, and would be construing a contract not by its terms and provisions, or by the consideration upon which it was executed, but by the motives which operated on the party who made it. It is in effect avoiding a contract, containing no illegal stipulation and founded on no illegal consideration, as a punishment of one of the parties for a different and substantive illegal act, in which he is not shown to have participated.
This Court has in two recent cases held the same doctrine, substantially, as that announced in this opinion. In Naff v. Crawford, 1 Heis., 116, the court, after explaining what is meant by contracts immoral, illegal, or in violation of public policy, or founded on an illegal or immoral consideration, and which can not be enforced, says:
“ We lay down the rule as deduced from these illustrations, to be, that the agreement must be to do or further some illegal or immoral purpose, or some purpose in violation of public policy. The element that destroys *464 the validity of the agreement is the purpose by the agreement to effect the forbidden end, else the consideration for the promise must be to do an illegal act. If this were not the rule then a contract might he declared void as against public policy or public law, that does not stipulate for the violation of the one or the other.”
This clearly implies that a contract that does not stipulate for any violation of law, and which is not founded on any illegal consideration may be enforced, and conclusively negatives the inference that a purpose not expressed in the contract, but cherished in the mind of the party can render it invalid.
The same principle was laid down in the case of Tedder v. Odom, 2 Heis., 69.
We hold, therefore, that the lending of the money was not illegal, unless as part of the contract the borrowers agreed with the lender to apply it to an illegal purpose; and this holding we are of opinion is consonant with sound reason and well established legal principles.
The court further charged the jury that Eeese, the plaintiff’s intestate, having signed the agreement to pay his share of the note discounted by the Bank, although the Bank discounted the note in good faith and thereby received a good title to it, the administrator could not recover.
This it is insisted is erroneous and we think it is.
Beese was not a party to the note, but a party to the agreement, by which he bound himself to pay his proportion of the note. This agreement could not have been enforced against him. The execution of the note was a distinct and substantive agreemen.t; so also was the assignment of it by the Bank to Beese. The assignment to Beese was a new contract and executed upon a new consideration. If the Bank had a good title to it and assigned it to Beese for value, he acquired in and to it the same right which the Bank had
In 11 Wheaton, 269, Marshall, C. J., held that a new contract founded on a new consideration, although in relation to property respecting which there had been unlawful transactions between the parties, is not itself unlawful. The principle is further illustrated on page 272, where the case of Faikney v. Reynous is cited. In that case the plaintiff and one Richardson were jointly concerned in certain contracts prohibited by law, on which loss was sustained, the whole of which was paid by the plaintiff. A bond was given for Richardson’s proportion of the loss. It was hold that the plaintiff was entitled to recover. Lord Mansfield stated, that if one person apply to another to pay his debt, whether contracted for usury or any other purpose, that he is entitled to recover it back again. The Chief Justice remarked: “ This is a strong case to show that a subsequent contract not stipulating a prohibited act, although for money advanced for an unlawful transaction may be sustained in a court of justice.”
The disposition of the foregoing exceptions to the charge disposes also of the exceptions to the Judges refusal to charge as requested. Tt follows *465 from the principle announced in this opinion that the judgment of the court below must be reversed, and the cause will be remanded for a new trial.